Michael **ZEUNER**, Eamon Kelly, and Jean Brunel, Plaintiffs,

v.

**SUNTRUST BANK INC.,** Suntrust Banks Inc. Severance Pay Plan, and Suntrust Banks Severance Plan Administrator, Defendants.

15 Civ. 2292 (DAB)

United States District Court, S.D. New York.

Signed 03/31/2016

Alexandra Manfredi, William David Frumkin, Frumkin & Hunter LLP, White Plains, NY, Elizabeth Evelyn Hunter, Frumkin & Hunter LLP, Goshen, NY, for Plaintiffs.

Kathleen McLeod Caminiti, Alexa Erin Miller, Fisher & Phillips, LLP, Murray Hill, NJ, for Defendants.

### MEMORANDUM & ORDER

Deborah A. Batts, United States District Judge

Plaintiffs Michael Zeuner, Eamon Kelly, and Jean Brunel ("Plaintiffs") bring this action against their former employer, Sun-Trust Banks Inc. ("SunTrust"), SunTrust Banks, Inc. Severance Pay Plan (the "Severance Plan"), and the SunTrust Banks Severance Plan Administrator (the "Administrator," and together with SunTrust and the Severance Plan, "Defendants"). Plaintiffs allege that Defendants terminated their employment and subsequently denied them severance pay to which they were entitled under the Severance Plan, in violation of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1101 et. seq. ("ERISA").

Defendants now move to dismiss each of Plaintiffs' claims for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons set forth below, Defendants' Motion to Dismiss the Complaint is GRANTED.

## I. BACKGROUND

The following facts are drawn from the Complaint and are assumed true for purposes of the instant Motion.

Plaintiffs were each employed by GenSpring Family Offices, LLC ("GenSpring"), a SunTrust subsidiary, in various

capacities prior to October 5, 2012. (Compl. ¶¶ 4, 6, 8, 35.) SunTrust is a bank holding company, while GenSpring provides wealth management services to wealthy families throughout the United States. (Id. ¶¶ 11-12.) Plaintiffs allege that they consistently performed their jobs in an excellent fashion and received positive performance evaluations and reviews from colleagues. (Id. ¶¶ 49, 66, 89.)

In early 2012, SunTrust conducted a strategic review at Genspring and decided to reorganize. (Id. ¶ 22.) On October 5, 2012, Plaintiffs were terminated from their employment with SunTrust. (Id. ¶ 37.) Plaintiffs allege that the sole reason given at the time for their termination was "a change in leadership." (Id.)

On December 11, 2012, Plaintiffs submitted claims for severance benefits under the Severance Plan, a self-funded employee benefit plan sponsored by SunTrust and governed by ERISA. (Id. ¶¶ 10, 39.) The Severance Plan provides severance benefits for employees whose employment was terminated due to a "Qualifying Termination." (Id. ¶ 14; Lombard Decl. Ex. A (the "Plan Terms") § 4.1(a).) A Qualifying Termination is defined as "an involuntary separation . . . because of a reduction in force (RIF) or job elimination or because of a consolidation, merger, or reorganization or other business related changes . . ." (Compl. ¶ 15; Plan Terms § 2.12.) The Plan Terms also specify that a Qualifying Termination does not include a "demotion, transfer or termination resulting from disciplinary action or poor job performance" or "[a]n involuntary termination . . . for any reason not listed above." (Plan Terms § 2.12.)

On April 15, 2013, the Administrator denied Plaintiffs' claims for benefits. (Compl. ¶ 40; see Lombard Decl. Ex. C (the "Claim Denial Letters").) The Administrator rejected Plaintiffs' contention that their dismissals were due to a "reorganization or other business related change." (Claim Denial Letters at 1, 4, 7.) The letters stated:

[T]he definition of "qualifying termination" does state that an "other business related change" could be a trigger for severance eligibility. However, taken in context, the provision is interpreted to refer to job loss due to third-party transactions such as mergers and divestitures.

(Id.) The Administrator concluded that Plaintiffs had been terminated due to an internal "change in leadership," and were therefore ineligible for severance benefits. (Id.) The letters also noted that "poor job performance" is among the exclusions from a Qualifying Termination and cited "the company's failure to perform and your role and involvement as a senior leader" as the basis for Plaintiffs' terminations. (Id.)

On May 16, 2013, Plaintiffs appealed their claim denials. (Compl. ¶ 42.) On August 10, 2013, the Administrator denied Plaintiffs' appeals and in doing so reiterated its interpretation of "other business related change" to refer to third-party transactions. (Id. ¶ 43; see Lombard Decl. Ex. D (the "Appeal Denial Letters") at 2, 5, 8.) The Administrator again noted that Plaintiffs were "senior leader[s] within the organization that was not performing," and stated that the "decision to terminate employment was made based on role, impact to the business, historical role/actions/contributions and lack of confidence in the employee's ability to move the business forward." (Appeal Denial Letters at 2, 5, 8.)

Plaintiffs filed the instant action on March 26, 2015.

## II. DISCUSSION

### A. Legal Standard for Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

For a complaint to survive a motion brought pursuant to Fed. R. Civ. P. 12(b)(6), the plaintiff must have pleaded "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility," the Supreme Court has explained,

> when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief."

Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Twombly, 550 U.S. at 556–57, 127 S.Ct. 1955). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555, 127 S.Ct. 1955 (citation and alteration omitted). "In keeping with these principles," the Supreme Court has stated,

> [A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court

should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Iqbal, 556 U.S. at 679, 129 S.Ct. 1937.

In considering a motion under Rule 12(b)(6), a court must accept as true all factual allegations set forth in a complaint and draw all reasonable inferences in favor of the plaintiff. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n. 1, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); Blue Tree Hotels Inv. (Canada) Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir.2004). However, this principle is "inapplicable to legal conclusions," Iqbal, 556 U.S. at 678, 129 S.Ct. 1937, which, like a complaint's "labels and conclusions," Twombly, 550 U.S. at 555, 127 S.Ct. 1955, are disregarded. Nor should a court "accept [as] true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678, 129 S.Ct. 1937.

On a motion to dismiss pursuant to Rule 12(b)(6), "a district court may consider ... documents attached to the complaint as exhibits[ ] and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir.2010). Moreover, "[w]here a document is not incorporated by reference, the court may never[the]less consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint." Id. (internal quotation marks omitted). However, "even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document." Id. (quoting Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir.2006)). Though such evidence may be considered when attached to or incorporated into the Complaint, the Court's function is "not to weigh the evidence that might be presented at a trial

but merely to determine whether the complaint itself is legally sufficient." <u>Holloway v. King</u>, 161 Fed.Appx. 122, 124 (2d Cir. 2005) (internal quotation marks omitted).

The Complaint relies heavily on the Plan Terms, the Claim Denial Letters and the Appeal Denial Letters, and neither party disputes the accuracy or authenticity of those documents. Accordingly, the Court will consider them in addition to the allegations set forth in the Complaint.

### B. Plaintiffs' ERISA § 502(a)(1)(B) Claim

#### 1. Legal Framework and Standard of Review

▮ Plaintiffs' primary contention is that they were wrongfully denied benefits under the Severance Plan in violation of ERISA § 502(a)(1)(B), which provides a cause of action for participants in an ERISA-governed benefits plan "to recover benefits due to him under the terms of his plan." 29 U.S.C. § 1132(a)(1)(B). "Although generally an administrator's decision to deny benefits is reviewed <u>de novo</u>, where, as here, written plan documents confer upon a plan administrator the discretionary authority to determine eligibility, [the Court] will not disturb the administrator's ultimate conclusion unless it is arbitrary and capricious." <u>Hobson v. Metro. Life Ins. Co.</u>, 574 F.3d 75, 82 (2d Cir.2009) (internal quotations and citation omitted). Plaintiffs do not dispute that the Severance Plan confers discretionary authority on the Administrator.

▮ Under the arbitrary and capricious standard of review, "a court may overturn a plan administrator's decision to deny benefits only if the decision was without reason, unsupported by substantial evidence or erroneous as a matter of law." <u>Durakovic v. Bldg. Serv. 32 BJ Pension Fund</u>, 609 F.3d 133, 141 (2d Cir.2010). "Substantial evidence is such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the administrator and requires more than a scintilla but less than a preponderance." <u>Id.</u> "Where both the plan administrator and a spurned claimant offer rational, though conflicting, interpretations of plan provisions, the administrator's interpretation must be allowed to control." <u>McCauley v. First Unum Life Ins. Co.</u>, 551 F.3d 126, 132 (2d Cir.2008) (internal quotations and citation omitted).

▮ Plaintiffs' argument that the Administrator was acting under a conflict of interest is an additional wrinkle. "[A]n ERISA-fund administrator that 'both evaluates claims for benefits and pays benefits claims' is conflicted, and ... a district court, when reviewing the conflicted administrator's decisions, should weigh the conflict as a factor in its analysis." <u>Durakovic</u>, 609 F.3d at 138 (quoting <u>Metro. Life Ins. Co. v. Glenn</u>, 554 U.S. 105, 128 S.Ct. 2343, 171 L.Ed.2d 299 (2008)). The significance of the conflict in the Court's analysis will vary with the circumstances, but "[n]o weight is given to a conflict in the absence of any evidence that the conflict actually affected the administrator's decision." <u>Durakovic</u>, 609 F.3d at 140.[1]

---

1. "Courts have found that a conflict affected the benefits decisions where there was a 'history of biased claims administration'; where the administrator engaged in 'deceptive or unreasonable conduct'; where the administrator took inconsistent positions that were both financially advantageous; where the administrator relied on a single report, which aligned with its financial interests, 'to the detriment of a more detailed contrary report without further investigation'; and where the administrator 'summarily dismissed' a claimant's report, which was 'vastly more detailed and particularized than the report on which the [administrator] relied.' " <u>Andrews v. Realogy Corp. Severance Pay Plan for Officers</u>, No.

Plaintiffs do not allege anything to suggest that a conflict of interest played a role in the Defendants' decision to deny Plaintiffs' benefits claims. The arbitrary and capricious standard of review thus applies. See Andrews, 2015 WL 736117, at *7; Boison v. Ins. Servs. Inc., 829 F.Supp.2d 151, 157 (E.D.N.Y.2011). The Court will, however, consider the alleged conflict of interest without according it undue significance.

### 2. Defendants' Motion to Dismiss

As an initial matter, the case law does not bear out Plaintiffs' contention that resolution of their claims on a motion to dismiss would not be appropriate. (See Pls.' Opp'n 6-10.) Although much of the authority in this area was developed at the summary judgment stage, dismissal under Fed. R. Civ. P. 12(b)(6) is nevertheless appropriate where the complaint fails to state a plausible claim for relief. E.g., Andrews, 2015 WL 736117, at *7; Boison, 829 F.Supp.2d at 157. The cases Plaintiffs rely on are not to the contrary: both were rendered pre-Iqbal and Twombly, and thus arguably apply a less demanding pleading standard, and in both the facts as pled plainly suggest that a conflict of interest influenced the decision to deny benefits. See Connell v. Guardian Life Ins. Co. of Am. Severance Plan, No. 02–CV–7522, 2003 WL 21459563, at *2 (S.D.N.Y. June 24, 2003) (denying motion to dismiss where plaintiff alleged that defendants "performed no investigation" before denying benefits and "never responded to his request that the denial of benefits be reviewed"); Suozzo v. Bergreen, No. 00–CV–9649, 2002 WL 1402316, at *6 (S.D.N.Y. June 27, 2002) (denying motion to dismiss where the denial of benefits occurred

"shortly after the plaintiff and [a defendant] had engaged in a bitter dispute leading to the plaintiff's termination"). Here, Plaintiffs do not allege any facts that suggest bias on the part of the Administrator or irregularities or inconsistencies in the claims process; instead, they assert that the discovery phase could uncover evidence relevant to their claims.[2] Plaintiffs' speculation notwithstanding, the allegations in the Complaint must accrete to "more than a sheer possibility" that Plaintiffs are entitled to relief. Iqbal, 556 U.S. at 678, 129 S.Ct. 1937. The Court is bound to apply that standard to the allegations in the Complaint.

The gravamen of Plaintiffs' ERISA § 502(a)(1)(B) claim is fairly straightforward. Plaintiffs argue that they were terminated due to a change in leadership at GenSpring, and a termination on that basis falls within the definition of a Qualifying Termination insofar as they were terminated "because of a consolidation, merger, or reorganization or other business related changes." (Pls.' Opp'n 16.) Noting that the terms preceding "other business related changes" all refer to changes involving third parties, Defendants rely on the ejusdem generis canon of construction and argue that, as a general term following more specific terms, it is reasonable as a matter of contract interpretation to restrict the phrase "other business related changes" to other changes involving third parties. (Defs.' Mem. 11-13); see United States v. Amato, 540 F.3d 153, 160 (2d Cir.2008) ("Under [ejusdem generis], general terms that follow specific ones are interpreted to

13–CV–8210, 2015 WL 736117, at *7 (S.D.N.Y. Feb. 20, 2015) (citing Durakovic, 609 F.3d at 139–40).

**2.** Specifically, Plaintiffs argue that they are "entitled to" discovery regarding Defendants'

alleged conflict of interest and Defendants' prior interpretations of the meaning of the Plan Terms. (Pls.' Opp'n 10-14.) Plaintiffs rely largely on cases in the discovery phase, which are inapposite here.

embrace only objects of the same kind or class as the specific ones.")

Plaintiffs insist that Defendants' interpretation is far too narrow and must take into account the full definition of a Qualifying Termination, including the list of ten specific exclusions that follow. (Pls.' Opp'n 16.) Plaintiffs also argue that Defendants' interpretation of the terms consolidation, merger and reorganization to refer to third-party transactions relies erroneously on "the meaning given to those terms only in a specialized legal sub-field" rather than the ordinary meaning an average person might ascribe to them. (Id. at 19.) Finally, Plaintiffs argue that ejusdem generis is inapplicable here because it would render the phrase "other business related changes" duplicative and therefore superfluous. (Id. at 19-20.)

Plaintiffs' arguments are not persuasive. It is not at all clear why the other clauses in the definition of a Qualifying Termination—"a reduction in force (RIF) or job elimination ... or a job evaluation that results in changes to the Participant's existing position such that the existing position and the new positions are not Comparable Jobs"—would render Defendants' interpretation of the phrase "other business related changes" too narrow, and Plaintiffs do not explain their position. Plaintiffs' arguments as to ejusdem generis fare no better. Plaintiffs object to reading the terms consolidation, merger and reorganization with a business or corporate connotation, yet they provide no alternative, "ordinary" meaning for the Court's consideration. And Plaintiffs' assertion that ejusdem generis is inapplicable here lacks merit because it would ostensibly apply to any circumstance in which the canon might be used in contract interpretation. In other words, Plaintiffs' argument would read ejusdem generis out of existence.

Defendants' interpretation of the Plan Terms is, at a minimum, reasonable. Plaintiffs' Complaint does not allege adequately that Defendants acted "without reason ... or erroneous[ly] as a matter of law." Durakovic, 609 F.3d at 141. Nor do Plaintiffs provide a credible alternative explanation, much less an alternative that would overcome the arbitrary and capricious standard of review. See McCauley, 551 F.3d at 132 ("Where both the plan administrator and a spurned claimant offer rational, though conflicting, interpretations of plan provisions, the administrator's interpretation must be allowed to control."). Plaintiffs' ERISA § 502(a)(1)(B) claim is accordingly DISMISSED.

### C. Plaintiffs' ERISA § 510 Claim

Plaintiffs also claim that Defendant SunTrust "falsely characterized the termination of Plaintiffs' employment as due to poor job performance, for the purpose of interfering with and preventing Plaintiffs from obtaining severance benefits to which they were entitled" in violation of ERISA § 510. (Compl. ¶ 143.) ERISA § 510 provides:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary ... for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan.

29 U.S.C. § 1140. "Section 510 protects against (1) the disruption of employment privileges to prevent the vesting or enjoyment of benefit rights; (2) the disruption of employment privileges to punish the exercise of benefit rights; and (3) the disruption of employment privileges to prevent or punish the giving of testimony in any proceeding relating to ERISA or a sister act." Sandberg v. KPMG Peat Marwick, L.L.P., 111 F.3d 331, 334 (2d Cir.1997). In

other words, Section 510 "is designed to protect the employment relationship that gives rise to an individual's benefit rights, not to create an action for wrongfully withheld benefits." DeSimone v. Transprint USA, Inc., No. 94–CV–3130, 1996 WL 209951, at *4 (S.D.N.Y. Apr. 29, 1996) (internal quotation marks omitted).

"A Section 510 claim is made enforceable through Section 502(a)(3) and (e) of ERISA ...." Rebaudo v. AT & T, 582 F.Supp.2d 250, 253 (D.Conn.2008) (quoting Tolle v. Carroll Touch, Inc., 977 F.2d 1129, 1134 (7th Cir.1992)). Section 502(a)(3) permits a participant, beneficiary, or fiduciary to bring a civil action "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan ...." 29 U.S.C. § 1132(a)(3). "Section 502(a)(3) has been characterized as a 'catch-all' provision which normally is invoked only when relief is not available under § 502(a)(1)(B)." Wilkins v. Mason Tenders Dist. Council Pension Fund, 445 F.3d 572, 578 (2d Cir.2006) (citing Varity Corp. v. Howe, 516 U.S. 489, 512, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996)).

 In order to state a claim, Plaintiffs must allege that SunTrust terminated their employment in order to interfere with their attainment of benefits governed by ERISA. E.g., Dister v. Cont'l Grp., Inc., 859 F.2d 1108, 1111 (2d Cir.1988) ("[N]o ERISA cause of action lies where the loss of pension benefits was a mere consequence of, but not a motivating factor behind, a termination of employment."); Marin v. Dave & Buster's, Inc., 159 F.Supp.3d 460, 462–63, No. 15–CV–3608, 2016 WL 526542, at *2 (S.D.N.Y. Feb. 9, 2016) (allowing a § 510 claim to proceed based on plaintiff's allegation that her employer changed her employment from full-time to part-time to avoid the cost of continuing to provide health insurance). Plaintiffs' Complaint does not allege that SunTrust terminated their employment in order to interfere with their severance benefits, not least because such a claim would be incoherent. Indeed, Plaintiffs do not allege that Defendants wrongfully interfered with their employment at all, but instead allege interference with their right to severance benefits following their terminations. (Compl. ¶ 143.) Plaintiffs accordingly fail to state a claim.

Plaintiffs argue that they should be permitted to plead a § 510 claim for equitable relief in the alternative to their § 502(a)(1)(B) claim, but their arguments are misplaced. First, as noted above, Plaintiffs fail to state a claim under § 510. However, even if the Court were to find their allegations sufficient, their claim must fail. Plaintiffs rely on Cigna Corp. v. Amara, 563 U.S. 421, 441, 131 S.Ct. 1866, 179 L.Ed.2d 843 (2011), to support their theory of equitable relief, and on Devlin v. Empire Blue Cross & Blue Shield, 274 F.3d 76, 89–90 (2d Cir.2001), in seeking to plead their § 510 claim in the alternative. Both cases undermine Plaintiffs' claims. In Cigna, the equitable relief under review involved reforming the terms of an ERISA benefit plan, and then enforcing those terms as reformed. 563 U.S. at 435–36, 131 S.Ct. 1866. It accordingly has no bearing on the relief sought here. Devlin, meanwhile, permits pleading a claim for "appropriate equitable relief" in the alternative, but its holding is patently limited to a breach of fiduciary duty claim for which there is no adequate alternative right of action and which, in any event, is not at issue here. 274 F.3d at 89–90; see also Schultz v. Texaco Inc., 127 F.Supp.2d 443, 451 (S.D.N.Y.2001) (permitting a breach of

fiduciary duty claim to be alleged in the alternative).

Here, by contrast, Plaintiffs are seeking the same remedy—payment of their severance benefits—via two alternative means. (See Compl. ¶ 144) (seeking "equitable relief;" "restitution . . . for loss of their severance benefits;" "prevention of unjust enrichment . . . for keeping monies owed to Plaintiffs;" and "disgorgement of monies which should have been paid to Plaintiffs"). Plaintiffs' approach is clearly foreclosed by the case law. See, e.g., Pelosi v. Schwab Capital Markets, L.P., 462 F.Supp.2d 503, 514 (S.D.N.Y.2006) ("Although characterized as equitable enforcement, [Plaintiff] seeks identical relief for his discrimination claim as his wrongful denial of benefits . . . claim. Both causes of action allege the same conduct and seek the same remedy.").

For the reasons set forth above, Plaintiffs' § 510 claim is DISMISSED.

### D. Leave to Amend

■■■■■ A court "should freely give leave" to replead "when justice so requires." Fed. R. Civ. P. 15(a)(2). But "it is within the sound discretion of the district court to grant or deny leave to amend. A district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir.2007) (internal citations omitted). Repleading would be futile when the "problem with [the pleader's] causes of action is substantive." See, e.g., Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir.2000). Here, Plaintiffs do not seek leave to replead, and dismissal without leave is appropriate given the plain language of the Plan Terms. "The problem with [Plaintiffs'] causes of action is substantive; better pleading will not cure it." Id.

### III. CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is GRANTED.

SO ORDERED.

