24-2196-cv
Santos v. Kimmel

# United States Court of Appeals
# For the Second Circuit

August Term, 2024

(Argued: March 24, 2025    Decided: September 15, 2025
Amended: October 6, 2025)

Docket No. 24-2196-cv

———————————————————

GEORGE SANTOS,

*Plaintiff-Appellant,*

v.

JAMES C. KIMMEL, AKA JIMMY KIMMEL, AMERICAN BROADCASTING
COMPANIES, INC., THE WALT DISNEY COMPANY,

*Defendants-Appellees.*

———————————————————

Before:

CABRANES, LOHIER, and SULLIVAN, *Circuit Judges.*

Former Congressman George Santos sued late-night show host Jimmy
Kimmel and the companies that own and broadcast Kimmel's show, Jimmy
Kimmel Live!, for copyright infringement and state law breach of contract and
fraudulent inducement. The suit arose after Kimmel, using various fictitious
names, submitted requests to Santos for personalized videos through the Cameo
platform. Santos fulfilled each request, and Kimmel then aired some of the
videos on his show as part of a series of segments titled "Will Santos Say It?"
The District Court dismissed the complaint for failure to state a claim, holding
that the copyright claims were barred by the fair use doctrine and that the state

law claims either were preempted by the Copyright Act or failed to state a claim. Because we agree that Santos's copyright claims were barred by the fair use doctrine and further conclude that each of Santos's state law claims failed to state a claim, we **AFFIRM**.

ROBERT M. FANTONE, Mancilla & Fantone, LLP, New York, NY (Andrew Mancilla, Mancilla & Fantone, LLP, New York, NY, Joseph W. Murray, Great Neck, NY, *on the brief*), *for Plaintiff-Appellant*.

NATHAN SIEGEL, Davis Wright Tremaine LLP, Washington, DC (Eric J. Feder, Davis Wright Tremaine LLP, Washington, DC, Raphael Holoszyc-Pimentel, Davis Wright Tremaine LLP, New York, NY, *on the brief*), *for Defendants-Appellees*.

LOHIER, *Circuit Judge*:

Former Congressman George Santos appeals from a final judgment of the United States District Court for the Southern District of New York (Cote, *J.*) dismissing his copyright infringement and state law claims against Jimmy Kimmel, American Broadcasting Companies, Inc. ("ABC"), which airs Kimmel's late-night show Jimmy Kimmel Live! ("JKL"), and ABC's parent company, The Walt Disney Company. Santos's suit arose after Kimmel, using various fictitious names, submitted requests to Santos for personalized videos through the Cameo platform. Santos fulfilled each request, and Kimmel then aired the videos on JKL as part of a mocking series of segments titled "Will Santos Say It?" The District

Court dismissed the complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, concluding that the copyright claims were barred by the fair use doctrine and that Santos's state law claims either were preempted by the Copyright Act or failed to state a claim. Because we agree that Santos's copyright claims were barred by the fair use doctrine and further conclude that each of Santos's state law claims failed to state a claim, we affirm.

**DISCUSSION**

We review *de novo* the District Court's dismissal of Santos's complaint under Rule 12(b)(6). *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 110 (2d Cir. 2010). We consider "the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *Id.* at 111. In doing so, we may also take judicial notice of "copyright registrations[] as published in the Copyright Office's registry." *Island Software & Comput. Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 261 (2d Cir. 2005); *see also TCA Television Corp. v. McCollum*, 839 F.3d 168, 172 (2d Cir. 2016).

I.     **Copyright Infringement and Fair Use**

In a copyright action, the affirmative defense of fair use "excuses what might otherwise be considered infringing behavior, allowing courts to avoid

rigid application of the Copyright Act when it would stifle the very creativity the Act is meant to promote." *Hachette Book Grp., Inc. v. Internet Archive*, 115 F.4th 163, 179 (2d Cir. 2024) (quotation marks omitted). Under the Copyright Act, we consider the following non-exclusive factors in determining whether fair use has been established: "(1) the purpose and character of the use . . . ; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used . . . ; and (4) the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107.

In assessing the "purpose and character of the use" factor, we "focus[] chiefly on the degree to which the use is transformative, *i.e.*, whether the new work merely supersedes the objects of the original creation, or instead adds something new, with a further purpose or different character." *Andy Warhol Found. for Visual Arts, Inc. v. Goldsmith*, 11 F.4th 26, 37 (2d Cir. 2021) (quotation marks omitted). Our focus reflects an understanding that "fair use is a flexible concept, whose application varies depending on the context." *Hachette Book Grp.*, 115 F.4th at 179 (quotation marks omitted). It may be "so clearly established by a complaint as to support dismissal of a copyright infringement claim" at the pleading stage. *TCA Television Corp.*, 839 F.3d at 178.

4

Addressing the "purpose and character of the use" factor, Santos maintains that the use was not transformative because Kimmel "instigated the creation of the original Works" and accordingly is the "designer[]" of their original purpose. Appellant's Br. 11. Santos does not dispute the District Court's finding that the purpose of the allegedly infringing use was "to comment on the willingness of Santos . . . to say absurd things for money." App'x 235. He argues instead that this was also *his* original purpose in making the videos. But whether a secondary use is transformative turns on what a reasonable observer thinks, not the subjective intent of the copyright holder or that of the secondary user. *See Andy Warhol Found. for Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 544 (2023) ("[T]he subjective intent of the user (or the subjective interpretation of a court) [does not] determine the purpose of the use."). As Santos's original allegation acknowledges, a reasonable observer here would think the videos conveyed "feelings of hope, strength, perseverance, encouragement, and positivity," not a willingness to say absurd things for money. App'x 15.

Santos also contends that Kimmel's false representations demonstrate bad faith and thus nullify the fair use defense. *See Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 562–63 (1985). We disagree. It is true that the

5

Supreme Court stated in *Harper & Row* that "[f]air use presupposes good faith and fair dealing." *Id.* at 562 (quotation marks omitted). But the Court has since distanced itself from this statement.[1] In any event, Santos's complaint contradicts any claim of a purpose on the Defendants' part to "supplant" Santos's "commercially valuable right" in the videos. *Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 83 (2d Cir. 2014) (quotation marks omitted). To the contrary, the complaint paints a portrait of defendants motivated by (sarcastic) criticism and commentary. *See Authors Guild v. Google, Inc.*, 804 F.3d 202, 215–16 (2d Cir. 2015). We thus agree with the District Court that the first factor strongly supports a finding of fair use.

We are equally unpersuaded by Santos's challenges to the District Court's analysis of the remaining factors. Among other things, the relevant copyright registrations establish that the videos were published on the same day they were created. *See* App'x 160–69; 17 U.S.C. § 101. And it is clear on the face of Santos's

---

[1] In *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 585 n.18 (1994), the Supreme Court acknowledged the statement in *Harper & Row*, but "expressed some skepticism about whether bad faith has any role in a fair use analysis." *Google LLC v. Oracle America, Inc.*, 593 U.S. 1, 32 (2021). More recently, the Court has noted that it "find[s] this skepticism justifiable, as copyright is not a privilege reserved for the well-behaved." *Id.* (quotation marks omitted). We reject Santos's argument regardless of the relevance of good or bad faith.

complaint that Santos has not suffered market harm within the meaning of the fourth fair use factor because "[w]e ask not whether the second work would *damage* the market for the first (by, for example, devaluing it through parody or criticism), but whether it *usurps* the market for the first by offering a competing substitute." *Hachette Book Grp.*, 115 F.4th at 189 (quotation marks omitted); *see Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 592 (1994) ("[T]he unlikelihood that creators of imaginative works will license critical reviews or lampoons of their own productions removes such uses from the very notion of a potential licensing market.").

Because we need only consider "the original version of [the videos] and the [JKL segments] at issue" to decide "the question of fair use," *Cariou v. Prince*, 714 F.3d 694, 707 (2d Cir. 2013) (quotation marks omitted), we affirm the District Court's conclusion that fair use bars Santos's copyright claims even at the pleading stage.

## II.   State Law Claims

Santos also appeals the District Court's dismissal of his state law claims for breach of contract, breach of implied contract, and fraudulent inducement. The District Court dismissed the first two state law claims on the ground that they

were preempted by the Copyright Act. Santos responds that those claims are "*qualitatively* different from a copyright infringement claim" and thus not preempted. *Melendez v. Sirius XM Radio, Inc.*, 50 F.4th 294, 302 (2d Cir. 2022) (quotation marks omitted). We need not resolve this issue, however, because Santos's state law contract claims fail to state a claim for relief under state law.

We first address Santos's direct breach of contract claim under the Cameo Terms of Service. Santos is not party to the Terms of Service to which users (like Kimmel) must agree and that Santos alleges were breached. Under Illinois law, which governs the Terms of Service, there is a "strong presumption against conferring benefits to noncontracting third parties." *Barry v. St. Mary's Hosp. Decatur*, 68 N.E.3d 964, 976 (Ill. App. Ct. 2016). Indeed, "the implication that the contract applies to third parties must be so strong as to be practically an express declaration." *Id.* (quotation marks omitted). Here, Santos identifies nothing close to an "express declaration" that the relevant provisions of the Terms of Service apply to him or other noncontracting parties. Indeed, other provisions of the Terms of Service *do* contain third-party beneficiary language, indicating that when the parties to that agreement intended to allow provisions of the contract to be enforced by third parties, they said so expressly.

We next address Santos's breach of implied contract claim. Under New York law, which governs this claim, we consider "the intent of the parties and the surrounding circumstances" to determine "[w]hether an implied-in-fact contract was formed and, if so, the extent of its terms." *Rocky Point Props., Inc. v. Sear-Brown Grp., Inc.*, 744 N.Y.S.2d 269, 271 (4th Dep't 2002) (quotation marks omitted). In this case, however, Santos's complaint does not "allege, in nonconclusory language, . . . the essential terms of the parties' . . . contract, including those specific provisions of the contract upon which liability is predicated." *Caniglia v. Chi. Trib.-N.Y. News Syndicate, Inc.*, 612 N.Y.S.2d 146, 147 (1st Dep't 1994); *see* App'x 22 ¶¶ 78-79 (failing to plead the essential terms of the putative implied contract that the Defendants allegedly breached). Nor does Santos plausibly allege that there was "an indication of a meeting of minds of the parties constituting an agreement" that Kimmel would adhere to the Terms of Service. *DG & A Mgmt. Servs., LLC v. Secs. Indus. Ass'n Compliance & Legal Div.*, 859 N.Y.S.2d 305, 306 (3d Dep't 2008) (quotation marks omitted); *see also Tjoa v. Julia Butterfield Mem'l Hosp.*, 612 N.Y.S.2d 676, 677 (2d Dep't 1994).

Finally, Santos challenges the District Court's dismissal of his fraudulent inducement claim for failure to allege any out-of-pocket loss as required under

9

New York law. *See Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 421 (1996). We agree with the District Court's conclusion that Santos failed to allege that he suffered any actual out-of-pocket loss as the victim of the alleged fraud. *See Connaughton v. Chipotle Mexican Grill, Inc.*, 29 N.Y.3d 137, 142–43 (2017). We therefore affirm the District Court's dismissal of that claim.

## CONCLUSION

We have considered Santos's remaining arguments and conclude that they are without merit. For the foregoing reasons, we **AFFIRM** the judgment of the District Court.