**ACQUEST HOLDINGS, INC., Plaintiff,**

v.

**TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, Defendants.**

1:16–CV–00212 EAW

United States District Court, W.D. New York.

Signed November 3, 2016

Michael A. Brady, Daniel J. Brady, Hagerty & Brady, Buffalo, NY, for Plaintiff.

Adam R. Schwartz, McElroy, Deutsch, Mulvaney & Carpenter, LLP, New York, NY, for Defendants.

## DECISION AND ORDER

Elizabeth A. Wolford, United States District Judge

## INTRODUCTION

Plaintiff Acquest Holdings, Inc. ("Plaintiff") commenced this action on February 5, 2016, by filing a Summons and Complaint in New York State Court. (Dkt. 1–1). Defendant Travelers Casualty and Surety Company of America ("Defendant") brought the case to this Court by a Notice of Removal, filed March 10, 2016. (Dkt. 1). Plaintiff asserts a claim for breach of contract based on Defendant's failure to provide Plaintiff certain insurance coverage to which Plaintiff was allegedly entitled under a crime policy of insurance (the "Policy") issued by Defendant to Plaintiff. (Dkt. 1–1 at ¶¶ 34–40).

Presently before the Court is Defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. 2). Defendant seeks dismissal of Plaintiff's breach of contract claim on the ground that Plaintiff failed to comply with a condition precedent to coverage under the Policy by not providing Defendant timely notice of loss after it discovered the loss. (Id.). For the following reasons, Defendant's motion is denied.

## BACKGROUND

### I. Complaint

Plaintiff's breach of contract claim is based on the following factual allegations, which are drawn from the Complaint. Plaintiff is a corporation engaged in real estate development. (Dkt. 1–1 at ¶¶ 1–2). In May 2007, Defendant, an insurance company, issued to Plaintiff the Policy, which covered "generally, crime and fraud, including ... employee theft and fraud." (Id. at ¶ 4). Under the Policy, Defendant insured Plaintiff against a single event of employee theft or fraud, up to one million dollars. (Id. at ¶ 6). Plaintiff renewed the Policy annually, with coverage continuing through November 9, 2015. (Id. at ¶ 15).

Plaintiff, through its subsidiary, Acquest Vegas LLC (also a named insured), contracted to build and lease to the U.S. Department of Veteran's Affairs an outpatient facility in Las Vegas (the "Project"). (Id. at ¶¶ 7–8). The Project began in April 2009 and finished in August 2011. (Id.). Plaintiff employed Brian Vanderburgh as the Project Manager. (Id. at ¶ 9). In this role, Vanderburgh was responsible for billings from contractors. (Id. at ¶ 13). Acquest Vegas LLC selected Recreation Development Company of Las Vegas ("RDC"), owned by Jeffrey Whittle, as the Project's general contractor. (Id. at ¶¶ 11–12). During the Project, Vanderburgh colluded with Whittle to "defraud[ ] and embezzle[ ] money from [P]laintiff through a complex scheme using a variety of subterfuges." (Id. at ¶ 14). Plaintiff was not aware of this scheme and made its final payment to contractors on December 19, 2011. (Id. at ¶¶ 14–15).

On March 1, 2014, Plaintiff's vice president, Michael Huntress, received a telephone call from a former RDC employee, who said that "a company owned by ... Vanderburgh was paid kickbacks by RDC on the Project." (Id. at ¶ 16). The same day, Plaintiff contacted two other former RDC employees, who each stated that they believed RDC and Vanderburgh had engaged in embezzlement. (Id. at ¶ 17). On March 10, 2014, Plaintiff reported the potential fraud and embezzlement to the Las Vegas Metropolitan Police Department ("LVMPD"). (Id. at ¶ 18).

Plaintiff's Complaint quotes a section of the Policy entitled "[Insured's] Duties in the Event of a Loss":

After [the insured] discover[s] a loss or a situation that may result in loss of or loss from damage to Money, Securities, or Other Property that exceeds twenty-five percent (25%) of the Single Loss Retention, [the insured] must:

(a) notify [defendant] as soon as possible;

(b) notify law enforcement authorities if [the insured] has a reason to believe that any loss ... involves a violation of law;

(c) submit to an examination under oath at [defendant's] request and give [defendant] a signed statement of [the insured's] answers;

(d) give [defendant] a detailed, sworn proof of loss within 120 days; and

(e) cooperate with [defendant] in the investigation and settlement of any claim.

(*Id.* at ¶ 19 (alterations in original)). Plaintiff alleges that based on the "limited information" it had in March 2014, it "was not able to report a 'loss' to [D]efendant with any meaningful detail or particularity in accordance with the ... Policy and specifically could not submit a sworn detailed proof of loss with any meaningful detail." (*Id.* at ¶ 20).

On April 25, 2014, Plaintiff sent business records to the LVMPD, per its request, for use in its investigation. (*Id.* at ¶ 21). While investigating Vanderburgh and RDC, the LVMPD contacted the Nevada State Contractors Board ("NSCB"), which had obtained copies of checks that RDC issued to a company owned by Vanderburgh. (*Id.* at ¶¶ 22–23). On December 16, 2014, the NSCB served a "Notice of Hearing" on Plaintiff and RDC in connection with the fraud and embezzlement scheme, along with documents that "for the first time ... gave [P]laintiff sufficient information to report a loss" under the Policy. (*Id.* at ¶ 24). Plaintiff alleges that until it received the

NSCB's Notice of Hearing and attached documents, Plaintiff had only suspected fraud and embezzlement but did not have enough knowledge to discover or report a loss to Defendant in accordance with the Policy. (*Id.* at ¶ 25).

On February 1, 2015, Plaintiff notified Defendant about the suspected loss and its claim under the Policy, and on February 10, 2015, Plaintiff served on Defendant a "Proof of Loss," supported by the NSCB documents. (*Id.* at ¶¶ 26–28). On June 4, 2015, Plaintiff submitted to Defendant a revised proof of loss. (*Id.* at ¶ 29). On June 29, 2015, Defendant denied Plaintiff's claim on the basis that, *inter alia*, Plaintiff breached the Policy by delaying reporting the loss to Defendant and by not providing a sworn proof of loss within 120 days of discovery. (*Id.* at ¶ 30).

## II. Defendant's Motion to Dismiss

Defendant seeks dismissal of the Complaint, arguing that it had no obligation to cover Plaintiff's losses because Plaintiff failed to provide Defendant a timely notice of claim and Proof of Loss, as required by the Policy—which, according to Defendant, is incorporated by reference in Plaintiff's Complaint. (Dkt. 2–1 at 16–20). Defendant argues that Plaintiff discovered a loss on March 1, 2014 (when Huntress had telephone conversations with three former RDC employees regarding the fraud), or, at the latest, on March 10, 2014 (when Plaintiff filed a police report). (*Id.* at 18–19). Despite this discovery, Plaintiff waited 11 months to provide Defendant a notice of loss, which, according to Defendant, was an unreasonable delay as a matter of law. (*Id.* at 11, 18–19). Defendant also contends that Plaintiff's good-faith belief in Vanderburgh's honesty or its failure to understand the full details of the scheme do not excuse the 11–month delay. (*Id.* at 19).

Attached to Defendant's motion were copies of the following documents (spanning over 600 pages), each of which, according to Defendant, was incorporated by reference in Plaintiff's Complaint:

- Policy (Dkt. 2–3);
- Proof of Loss, dated February 10, 2015 (Dkt. 2–4);
- Revised Proof of Loss, dated June 4, 2015 (Dkt. 2–5);
- Police Report, dated March 10, 2014 (Dkt. 2–6);
- Notice of Hearing by the NSCB (Dkt. 7–7; Dkt. 7–8); and
- Denial Letter, dated June 29, 2015 (Dkt. 2–9).

(Dkt. 2–1 at 6 nn.1–3, 7 nn.4 & 6, 9 n.10). Defendant's Statement of Facts was drawn from these documents, not just the Complaint. (*Id.* at 5–10). For example, Defendant quoted: (1) the Police Report; (2) a "Voluntary Statement," dated March 13, 2014, given by Huntress to the LVMPD, which was among the exhibits from the NCSB's Notice of Hearing; and (3) the Policy's definition of the term "Discover." (*Id.* at 7–8, 16–17). Defendant also noted that its Denial Letter had stated, *inter alia*, that Plaintiff had information indicating that Vanderburgh and RDC had been engaged in another fraudulent scheme before the Project began. (*Id.* at 8–9).

### III. Plaintiff's Response

In opposition to Defendant's motion, Plaintiff argues, as an initial matter, that the extra-pleading documents may not be considered on a Rule 12(b)(6) motion. (Dkt. 8 at 8–12). According to Plaintiff, only the Policy was incorporated by reference. (*Id.* at 11). By contrast, the remaining documents supplied by Defendant were not relied upon in drafting the Complaint, were not quoted or mentioned in the Complaint, and were not so central to the claim that they may be deemed incorporated.

(*Id.* at 11–12). Plaintiff acknowledges that the Court may convert the motion to dismiss to a motion for summary judgment when a party has presented materials beyond those incorporated in the Complaint, but insists that the Court should not convert in this case because discovery has not taken place. (*Id.* at 12–13).

Plaintiff argues that the question of when it discovered the loss is factual. (*Id.* at 15). According to Plaintiff, discovery of loss occurs when one has knowledge—not mere suspicion—of facts that would "justify a careful and prudent man in charging another with fraud or dishonesty." (*Id.* at 13–14 (quoting *Am. Sur. Co. v. Pauly*, 170 U.S. 133, 147, 18 S.Ct. 552, 42 L.Ed. 977 (1898)). Plaintiff argues that, based on the Complaint, discovery occurred in December 2014, when Plaintiff became aware of specific facts about the fraudulent scheme beyond just suspicion. (*Id.* at 21). Plaintiff argues that as of March 2014—when Defendant argues discovery occurred—its duty to inquire into the scheme may have arisen, but Plaintiff did not have facts from which it could conclude that a loss occurred. (*Id.* at 23–24). Finally, Plaintiff argues that, even if the Court were to convert the motion to one for summary judgment and consider Defendant's attached documents, the documents do not show that Plaintiff had knowledge of a crime or loss as of March 2014. (*Id.* at 24–25).

### IV. Defendant's Reply

Defendant replies that the Court may properly consider the exhibits attached to its motion to dismiss because they are "documents of which Plaintiff had undisputed notice, were referenced in, and relied on by Plaintiff in framing its [C]omplaint, and that specifically contradict the allegations therein." (Dkt. 15 at 6). Defendant characterizes the Police Report as a

"public record subject to judicial notice." (*Id.* at 7). Defendant argues that because Plaintiff has actual notice of these documents, the Court does not need to convert its Rule 12(b)(6) motion into a motion for summary judgment. (*Id.* at 7–8). Defendant contends that if the Court did convert the motion, the evidence shows that Plaintiff has failed to state a claim. (*Id.* at 8). Defendant asserts that the standard for determining when discovery of a loss occurred is objective, and as of March 2014, a reasonable person would have assumed that a loss has occurred, even if Plaintiff subjectively was uncertain. (*Id.* at 8–11). Defendant further argues that, even if the Court credits Plaintiff's argument that it did not discover the loss until December 14, 2014, the 50–day period between that date and the notice of loss on February 3, 2015, was an unreasonable delay as a matter of law. (*Id.* at 11–12).

### V. Plaintiff's Sur–Reply

On May 6, 2016, the Court granted Plaintiff's request to file a sur-reply. (Dkt. 16). In it, Plaintiff submits that the Second Circuit has recently clarified what materials may be considered on a motion to dismiss in its decision, *Goel v. Bunge, Ltd.*, 820 F.3d 554 (2d Cir. 2016). (Dkt. 17 at 4). According to Plaintiff, *Goel* stands for the proposition that a mere reference to, quotation of, or notice of an extra-pleading document are insufficient to permit a court to consider the document at the motion to dismiss stage. (*Id.* at 5). Applying the rule of *Goel* to this case, Plaintiff argues, leads to the conclusion that the Complaint's allegation of facts related to the NSCB investigation does not allow consideration of all documents stemming from that investigation. (*Id.* at 6). Accordingly, Plaintiff maintains that the Court should not summarily decide the case based on a record selected only by Defendant. (*Id.*).

Oral argument on Defendant's motion to dismiss was held before the undersigned on October 26, 2016, and the Court reserved decision. (Dkt. 25).

### DISCUSSION

### I. Scope of Review on a Motion to Dismiss

■ "A motion brought under Rule 12(b)(6) challenges only the 'legal feasibility' of a complaint." *Goel*, 820 F.3d at 558 (quoting *Glob. Network Commons., Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006)). "Because a Rule 12(b)(6) motion challenges the complaint as presented by the plaintiff, taking no account of its basis in evidence, a court adjudicating such a motion may review only a narrow universe of materials." *Id.* at 559. That universe generally is limited to: (1) the facts alleged on the face of the complaint; (2) documents attached to the complaint as exhibits; (3) documents incorporated in the complaint by reference; and (4) matters of which the court may take judicial notice. *Id.* Mere discussion or short quotation of a document does not amount to "incorporation by reference." *See Cosmas v. Hassett*, 886 F.2d 8, 13 (2d Cir. 1989).

In addition to the four types of materials catalogued above, there is another exception that allows a court to consider "a document not expressly incorporated by reference in the complaint" but that "is nevertheless 'integral' to the complaint." *Id.* "A document is integral to the complaint 'where the complaint relies heavily upon its terms and effect.'" *Goel*, 820 F.3d at 559 (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)). "[A] necessary prerequisite for that exception is that the 'plaintiff[ ] rel[y] on the terms and effect of [the] document in drafting the complaint... ; mere notice or possession is not enough.'" *Glob. Network Commc'ns, Inc.*, 458 F.3d at 156 (quoting *Chambers*,

282 F.3d at 153)). However, "even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document" and "that there exist no material disputed issues of fact regarding the relevance of the document." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (quotation and citation omitted).

■ The preliminary issue in this case is whether the Court may consider the following exhibits that are extrinsic to Plaintiff's Complaint:

- Policy (Dkt. 2–3);
- Proof of Loss, dated February 10, 2015 (Dkt. 2–4);
- Revised Proof of Loss, dated June 4, 2015 (Dkt. 2–5);
- Police Report, dated March 10, 2014 (Dkt. 2–6);
- Notice of Hearing by the NSCB (Dkt. 7–7; Dkt. 7–8); and
- Denial Letter, dated June 29, 2015 (Dkt. 2–9).

Because none of these documents were attached to the Complaint as exhibits or are matters of which the Court may take judicial notice,[1] the only way they may be considered is if they are deemed "incorporated by reference in" or "integral to" the Complaint. *See Goel*, 820 F.3d at 559, The parties agree that the only document that fits one of those criteria is the Policy (Dkt. 8 at 11), but they dispute whether the remaining documents may be reviewed, as well as the significance of the documents to the question of when Plaintiff discovered the loss.

Aside from the Policy, none of the remaining extrinsic documents are quoted in the Complaint, although the Complaint does mention most of them. An exception is the Police Report, which is never explicitly mentioned; rather, the Complaint only generally alleges that "on or about March 10, 2014, [P]laintiff reported the potential fraud and embezzlement to the [LVMPD]." (Dkt. 1–1 at ¶ 18). As to the other documents, the Complaint alleges receipt on December 16, 2014, of NSCB's "Notice of Hearing" and attached documents, which, according to Plaintiff, gave it sufficient information to report a loss. (*Id.* at ¶ 24). And, it alleges that it filed the Proof of Loss and Revised Proof of Loss in February and June 2015, respectively, and alleges the bases for Defendant's denial of coverage. (*Id.* at ¶¶ 26–29). But as discussed above, mere discussion of a document does not amount to incorporation by reference. *See Cosmas*, 886 F.2d at 13. In other words, Plaintiff's mere reference to these documents in the Complaint hardly justifies a conclusion that hundreds of pages of extrinsic materials may be consid-

---

1. Notwithstanding Defendant's argument, the Court declines at this stage to take judicial notice of the Police Report. Under Federal Rule of Evidence 201, "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it ... can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). "Put another way, facts appropriate for judicial notice must 'meet either [one of the] test[s] of indisputability contained in Rule 201(b): they [should be] common knowledge, [or] ... derived from an unimpeachable source.'" *Alvarez v. Cty. of Orange, N.Y.*, 95 F.Supp.3d 385, 398 (S.D.N.Y. 2015) (quoting *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998)) (alterations in original). It is not apparent that the Police Report contains facts that are common knowledge or derived from an unimpeachable source. And, as the *Alvarez* court noted, "district courts appear to be unsettled on whether judicial notice of materials such as these [police reports] is appropriate at the motion to dismiss stage," and there is "a lack of Second Circuit authority on the issue." *Id.* (collecting cases).

ered by this Court on a Rule 12(b)(6) motion.

Additionally, as is clear from the parties' arguments regarding when Plaintiff's discovery of loss occurred, there is a dispute as to the significance of these documents and how they bear on Plaintiff's discovery of loss and the timeliness of Plaintiff's notice to Defendant. For example, in its response, Plaintiff argues that a review of the extra-pleading materials would lead to the conclusion that there was no discovery of loss in March 2014. (Dkt. 8 at 24–25). Thus, it is clear that the parties have competing interpretations of the facts regarding when Plaintiff's discovery occurred. That factual dispute weighs against deeming these documents incorporated by reference or integral to the Complaint. *See DiFolco*, 622 F.3d at 111 (explaining that, even where a document is "integral" there must be "no material disputed issues of fact regarding the relevance of the document"). At this stage of the proceedings, the Court's duty "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Id.* at 113 (quotations omitted).

■ For these reasons, the Court finds that the Proof of Loss, Revised Proof of Loss, Police Report, Notice of Hearing by the NSCB, and Denial Letter are neither incorporated by reference nor integral to the Complaint, and are therefore outside the Court's review for purposes of the motion to dismiss. *See Goel*, 820 F.3d at 560 (cautioning against "the improper transformation of the Rule 12(b)(6) inquiry into a summary-judgment proceeding— one featuring a bespoke factual record, tailor-made to suit the needs of [the movants]"). Accordingly, the Court's review of the motion to dismiss is constrained to Plaintiff's Complaint and the Policy.[2]

## II. Legal Standard for Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A claim has facial plausibility when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Generally, the Court must accept as true all of the allegations contained in the complaint. *See id.* That rule does not apply to legal conclusions, however: "[t]hreadbare recitals of the elements of a cause of action, supported by

---

**2.** If, on a motion to dismiss, materials extrinsic to the complaint are presented to and not excluded by the court, the court may consider those materials if it treats the motion to dismiss "as one for summary judgment under Rule 56" and gives "[a]ll parties ... a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). Whether the Court should convert or decide the motion to dismiss on the pleadings alone is a discretionary decision. *See Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000) (explaining that district court may choose between conversion or exclusion of extra-pleading materials). Courts have declined to convert where, as here, "plaintiffs have not filed any material outside their pleadings in response to [the] motion to dismiss, and ... discovery is at a preliminary stage. ... " *D.D. ex rel. V.D. v. New York City Bd. of Educ.*, No. CV–03–2489 (DGT), 2004 WL 633222, at *16 (E.D.N.Y. Mar. 30, 2004), *vacated in part on other grounds*, 465 F.3d 503 (2d Cir. 2006), *opinion amended on denial of reh'g*, 480 F.3d 138 (2d Cir. 2007). Because Plaintiff has not filed any extra-pleading materials and no discovery has occurred, the Court declines to convert the motion to dismiss into a motion for summary judgment.

mere conclusory statements ... are not entitled to the assumption of truth." *Id.*; *see also Twombly*, 550 U.S. at 555, 127 S.Ct. 1955 (stating that the Court is "not bound to accept as true a legal conclusion couched as a factual allegation").

The plausibility standard "asks for more than a sheer possibility" that a defendant has acted unlawfully. *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937. "Where a complaint pleads tacts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955). "Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679, 129 S.Ct. 1937. Plausibility is "a standard lower than probability." *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 184 (2d Cir. 2012). "[A] given set of actions may well be subject to diverging interpretations, each of which is plausible," and "[t]he choice between or among plausible inferences or scenarios is one for the factfinder." *Id.* A court "may not properly dismiss a complaint that states a plausible version of the events merely because the court finds that a different version is more plausible." *Id.* at 185.

### III. Breach of Contract

 Under New York law, a breach of contract claim has four elements: "(1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages." *First Inv'rs Corp. v. Liberty Mut. Ins. Co.*, 152 F.3d 162, 168 (2d Cir. 1998). A plain reading of the Complaint confirms that Plaintiff's Complaint alleges these elements. (Dkt. 1–1 at ¶¶ 35–40). Because the Complaint has plausibly alleged a breach of contract

claim, the Court denies the motion to dismiss.

Here, the parties' dispute is factual and therefore inappropriate for resolution at the motion to dismiss stage. They dispute when Plaintiff had enough facts to cause a reasonable person to assume a loss had been or would be incurred. Whether a reasonable person would have been aware of sufficient facts in March 2014—when Huntress had telephone conversations with former RDC employees and reported a fraud to LVMPD (*id.* at ¶¶ 16–18)—or in December 2014—when Plaintiff received the NSCB "Notice of Hearing" (*id.* at ¶¶ 24–25)—is a factual issue. As the Second Circuit has explained:

> Under New York law, applicable here, [the court] uphold[s] notice-of-occurrence provisions in insurance contracts to aid insurers in early investigations, detection of fraudulent claims, and proper capital allocation... **Though the reasonableness of an insured's notice to the insurer is often a fact-bound question best left for trial,** where there is no excuse for the delay and mitigating considerations are absent, the issue may be disposed of as a matter of law in advance of trial.

*Pfeffer v. Harleysville Grp., Inc.*, 502 Fed. Appx. 28, 29–30 (2d Cir. 2012) (emphasis added) (quotation and citations omitted). In *Pfeffer*, the Second Circuit upheld the district court's grant of summary judgment in favor of an insurer due to a delay in notice that was unreasonable as a matter of law. *Id.* at 31; *see also Deso v. London & Lancashire Indem. Co. of Am.*, 3 N.Y.2d 127, 129, 164 N.Y.S.2d 689, 143 N.E.2d 889 (1957) (explaining that "reasonableness of a delay" in timely written notice is usually question for jury).

Defendant cited two cases for the first time at the motion hearing to support its argument that at this stage, the Court

should consider the extra-pleading documents and resolve the question of whether Plaintiff's notice was reasonable. First, Defendant pointed to *Gassiott v. Prudential Insurance Co. of America*, No. 08 Civ. 7358 (JFK), 2009 WL 3188428, at *2 (S.D.N.Y. Oct. 6, 2009). In that case, the court, when considering a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), reviewed the complaint, an insurance policy, "[p]laintiff's proof of loss submission, and [the insurer's] claim denial letters ... all of which were in [p]laintiff and/or his attorney's possession and explicitly referenced in the [c]omplaint." *Id.* at *2. The *Gassiott* court concluded that the statute of limitations barred the plaintiff's breach of contract action, and that the plaintiff could not show any exception to the statute of limitations period applied, or that he was entitled to application of estoppel or equitable tolling. *Id.* at *4–6.

Second, Defendant pointed to *Schupak Group, Inc. v. Travelers Casualty & Surety Co. of America*, 716 F.Supp.2d 262 (S.D.N.Y. 2010), *aff'd*, 425 Fed.Appx. 23 (2d Cir. 2011), in which the court dismissed a breach of contract claim arising out of an insurance company's denial of coverage for losses sustained as a result of employees' dishonest acts, finding the plaintiff failed to sufficiently plead adequate performance where "the Proof of Loss attached to the Complaint is neither signed nor sworn," as required to perform under the contract. *Id.* at 268–69. The *Schupak* court also noted that the parties did not dispute that the plaintiff gave adequate notice of loss to the insurance company defendant. *Id.* at 268.

In neither *Gassiott* nor *Schupak* was the court called upon to resolve a fact-based question the likes of which Defendant asks this Court to resolve in this case on a Rule 12(b)(6) motion. Here, Defendant asks the Court at this pre-answer stage to resolve fact-intensive questions as to when Plaintiff discovered the loss and when it should have reported the loss. Whether Plaintiff discovered the loss within the meaning of the Policy in March 2014 is a fact-based inquiry. Further, once Plaintiff discovered the loss in December 2014, whether Plaintiff's notice provided in February 2015 complied with the terms of the Policy is a factual question.[3] Indeed, the cases that Defendant cites for the proposition that delays of one to four months were unreasonable as a matter of law were resolved at the summary judgment stage or after trial. *See, e.g., Pfeffer*, 502 Fed.Appx. at 31 (summary judgment); *Am. Home Assur. Co. v. Republic Ins. Co.*, 984 F.2d 76, 78 (2d Cir. 1993) (affirming summary judgment decision); *Utica Mut. Ins. Co. v. Fireman's Fund. Ins. Co.*, 748 F.2d 118, 121 (2d Cir. 1984) (affirming ruling, after trial, that delay was unreasonable); *Minasian v. IDS Prop. Cas. Ins. Co.*, No. 14–CV–10125 (KBF), 2015 WL 8485257, at *5 (S.D.N.Y. Dec. 9, 2015) (summary judgment); *Chicago Ins. Co. v. Halcond*, 49 F.Supp.2d 312, 320 (S.D.N.Y. 1999) (summary judgment); *Deso*, 3 N.Y.2d at 129, 164 N.Y.S.2d 689, 143 N.E.2d 889 (finding on appeal that trial court erred in denying directed verdict at conclusion of trial);

3. Defendant improperly raised this argument—that Plaintiff's notice to Defendant was unreasonable even as alleged in the Complaint—for the first time in its reply papers. The Court notes that it is procedurally inappropriate to raise an argument for the first time in reply papers, and although the Court declines to address the fact-based argument

for the reasons set forth above, it could also disregard the argument on the basis that it was belatedly raised. *See Am. Hotel Int'l Grp., Inc. v. OneBeacon Ins. Co.*, 611 F.Supp.2d 373, 375 (S.D.N.Y. 2009) ("[A] district court is free to disregard argument raised for the first time in reply papers ....").

*Avery & Avery, P.C. v. Am. Ins. Co.*, 51 A.D.3d 695, 696, 858 N.Y.S.2d 319 (2d Dep't 2008) (summary judgment); *Evangelos Car Wash, Inc. v. Utica First Ins. Co.*, 45 A.D.3d 727, 727, 845 N.Y.S.2d 458 (2d Dep't 2007) (summary judgment); *Heydt Contracting Corp. v. Am. Home Assur. Co.*, 146 A.D.2d 497, 497, 536 N.Y.S.2d 770 (1st Dep't 1989) (summary judgment); *Power Auth. v. Westinghouse Elec. Corp.*, 117 A.D.2d 336, 340, 502 N.Y.S.2d 420 (1st Dep't 1986) (summary judgment). This fact-intensive inquiry may possibly be resolved in this case short of a trial, but not at this motion to dismiss stage. A resolution now would be premature. As a result, Defendant's motion to dismiss is denied.

### CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss (Dkt. 2) is denied.

SO ORDERED.