22-2861-cv
*Darnis v. Raytheon Technologies Corporation*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 3rd day of August, two thousand twenty-three.

PRESENT: GERARD E. LYNCH,
JOSEPH F. BIANCO,
MYRNA PÉREZ,
*Circuit Judges.*

———————————————————————

Geraud Darnis, David Hess, Michael Maurer, Richard Sanfrey, Dino DePellegrini, Bradley Hardesty, Roy Dion, Alan Machuga, Theresa MacKinnon, Christopher Doot, David Carter, Costas Loukellis, on behalf of themselves and all others similarly situated,

       *Plaintiffs-Appellants*,

    v.                                         22-2861-cv

Raytheon Technologies Corporation, Carrier Global Corporation, Otis Worldwide Corporation,

       *Defendants-Appellees.*[*]

———————————————————————

---

[*] The Clerk of Court is directed to modify the caption to conform to the above.

FOR PLAINTIFFS-APPELLANTS:

MATTHEW W.H. WESSLER (Gregory A. Beck, *on the briefs*), Gupta Wessler PLCC, Washington, DC; Robert A. Izard, Craig A. Raabe & Douglas P. Needham, *on the briefs*, Izard, Kindall & Raabe, LLP, West Hartford, CT.

FOR DEFENDANT-APPELLEE RAYTHEON:

WILLIAM SAVITT (Graham W. Meli & David E. Kirk, *on the brief*), Wachtell, Lipton, Rosen & Katz, New York, NY; Jonathan M. Freiman, *on the brief*, Wiggin and Dana LLP, New Haven, CT.

FOR DEFENDANT-APPELLEE CARRIER:

Theodore V. Wells Jr., Daniel J. Kramer, Audra J. Soloway & Robert N. Kravitz, Paul, Weiss, Rifkind, Wharton & Garrison LLP, New York, NY; Garrett S. Flynn, Law Offices of Garrett S. Flynn, LLC, West Hartford, CT.

FOR DEFENDANT-APPELLEE OTIS:

Margaret A. Dale, Tara M. Brailey, Bart H. Williams & Kyle A. Casazza, Proskauer Rose LLP, New York, NY & Los Angeles CA; Evan I. Cohen, Finn Dixon & Herling LLP, Stamford, CT.

Appeal from a judgment of the United States District Court for the District of Connecticut (Underhill, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiffs-appellants ("plaintiffs") appeal from the October 4, 2022 judgment of the United States District Court for the District of Connecticut (Underhill, *J.*) dismissing their claims for breach of contract, the implied covenant of good faith and fair dealing, and for specific performance, against defendants-appellees Raytheon Technologies Corporation ("Raytheon"), Carrier Global Corporation ("Carrier"), and Otis Worldwide Corporation ("Otis") (collectively,

2

"defendants") pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiffs are former executive, management, and key employees at United Technologies Corporation ("UTC"), a building systems and aerospace company, who held various types of stock-based performance incentive awards. In 2020, UTC merged with Raytheon Corporation, becoming Raytheon, and spun off two of its business segments into Carrier and Otis, respectively.

Plaintiffs' claims arise out of the treatment of their performance awards following the merger and spinoff.[1] To convert plaintiffs' UTC awards into Raytheon, Carrier, and Otis stock-based awards, defendants employed formulae that used an average of Raytheon's, Carrier's, and Otis's stock prices on the fourth and fifth days after the closing of the merger (the "4/5 VWAP") to value their awards. Plaintiffs allege that by using the 4/5 VWAP in the formulae rather than an average of Raytheon's, Carrier's, and Otis's opening day stock prices—which was used to value UTC common stock—they were harmed in two ways: (1) they received fewer shares; and (2) the strike prices of their awards increased. That outcome, plaintiffs argue, violated both the terms and purpose of various contractual documents governing their awards. Specifically, plaintiffs allege that using the 4/5 VWAP in the formulae independently breached the UTC Long-Term Incentive Plan[2] ("LTIP") and accompanying documents called the Schedule of Terms, which were annually sent to plaintiffs for each type of award issued under the LTIPs.

This Court "review[s] the grant of a motion to dismiss *de novo*, accepting all factual

---

[1] Plaintiffs' awards included, among other types, stock appreciation rights and stock options. In general, those awards are valuable to the extent a company's stock price exceeds the strike price, which is the stock price at the time awards were granted.

[2] Awards issued after April 30, 2018 were governed by a separate but substantially similar LTIP. The year the awards were issued are immaterial to this appeal.

allegations in the complaint as true and drawing all reasonable inferences in favor of the plaintiff." *Olson v. Major League Baseball*, 29 F.4th 59, 71 (2d Cir. 2022). In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). We also consider documents incorporated into the complaint by reference. *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 112 (2d Cir. 2010).

We assume the parties' familiarity with the underlying facts, the procedural history, and the issues on appeal, which we reference only as necessary to explain our decision to affirm.

## I. Breach of Contract

To state a breach of contract claim under Delaware law, which the parties agree applies, a plaintiff must allege (1) the existence of a contract, (2) the breach of an obligation imposed by that contract, and (3) resulting damage. *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003). "The proper construction of any contract is purely a question of law . . . ." *Exelon Generation Acquisitions, LLC v. Deere & Co.*, 176 A.3d 1262, 1266–67 (Del. 2017) (alteration adopted) (internal quotation marks and citation omitted). Delaware courts only consider extrinsic evidence when "the text is ambiguous," meaning that "the provisions in controversy are reasonably or fairly susceptible of different interpretations." *Samuel J. Heyman 1981 Continuing Tr. for Lazarus S. Heyman v. Ashland LLC*, 284 A.3d 714, 721 (Del. 2022) (internal quotation marks and citation omitted); *see also Alta Berkeley VI C.V. v. Omneon, Inc.*, 41 A.3d 381, 385 (Del. 2012) ("Contract language is not ambiguous merely because the parties dispute what it means. To be ambiguous, a disputed contract term must be fairly or reasonably susceptible to more than one meaning.").

4

Plaintiffs assert that defendants breached the provision titled "Adjustments" in the Schedule of Terms. Even assuming *arguendo* that the Schedule of Terms controls in this case,[3] plaintiffs fail to state a plausible claim that the "Adjustments" provision was breached. That provision provides that "equitable adjustments shall be made . . . *as the [Compensation] Committee determines* to be necessary or appro[]priate to prevent an increase or decrease in the value of [certain awards] relative to Common Stock or the dilution or enlargement of the rights of recipients." Joint App'x at 401 (emphases added). Plaintiffs' principal argument is that the "Adjustments" provision imposes a mandatory duty on the Compensation Committee "to make a determination that any adjustment to awards be designed to ensure that the value of the awards and the stock price would trend in the same direction." Plaintiffs' Br. at 21 (internal quotation marks and citation omitted). However, to the extent the "shall be made" language imposes a mandatory duty on defendants, that obligation is qualified by the phrase "as the [Compensation] Committee determines," which confers discretion on defendants in making award adjustments that the Committee "determine[d] to be necessary or appro[]priate." Joint App'x at 401. This is a broad grant of discretion.

In turn, plaintiffs do not plausibly allege that defendants exceeded that discretion. Contrary to plaintiffs' position, a document UTC circulated before the merger (which plaintiffs quote in their complaint) underscores that defendants made precisely the type of determination the Schedule of Terms contemplated. In that document, UTC explained that its formulae were chosen to "have a neutral financial impact" on the value of participants' awards before and after

---

[3] The district court determined that the LTIPs, rather than the Schedule of Terms, controlled the outcome.

5

the merger, *id.* at 431 (emphases omitted), and that the company picked the 4/5 VWAP "method" because it "allow[ed] for a more accurate reflection of how the market values each company following the [merger], and also reduces the effect of short-term volatility in a single day of trading," *id.* at 433. Although it is undisputed (with the benefit of hindsight) that the conversion method plaintiffs advance would have resulted in a relatively more favorable economic outcome for plaintiffs, the complaint contains no plausible allegation that the decision to use the 4/5 VWAP method fell outside the broad discretion afforded under the "Adjustments" provision. To the contrary, the record shows that the determination was reasoned—and that, had the companies' stock prices declined following the merger, plaintiffs would have been better off with the 4/5 VWAP as compared to an adjustment that used the opening day prices. As the district court correctly explained, "[p]laintiffs' grievances reveal that they challenge the end result of the conversion formulae rather than the formulae themselves." Special App'x at 35.

We also find unavailing plaintiffs' contention that using the 4/5 VWAP in the formulae severed the link between the awards' value and the price of the companies' stock. The "Adjustments" provision requires defendants to make adjustments that are "relative to Common Stock." Joint App'x at 401. That language does not impose a requirement on defendants to treat common stockholders and employees with stock-based awards equivalently. Instead, it merely requires that the value of plaintiffs' awards be directly linked to the companies' stock prices, which is what happened here since—as plaintiffs acknowledge— plaintiffs stand to benefit from the future appreciation of the companies' stock prices.

Finally, Raytheon's acknowledgment in an SEC filing about two months after the merger that there was a "material discontinuity" between the pre-merger UTC stock price and the 4/5

6

VWAP does not render plaintiffs' claim plausible. Joint App'x at 448.[4] Raytheon's disclosure reflects the fact that the companies' stock prices rose considerably in the week following the merger. That there was ultimately a gap between the opening price and the 4/5 VWAP, however, does not support plaintiffs' position that the decision—made before knowing how the markets would react to the merger—to employ the 4/5 VWAP was outside the broad discretion the "Adjustments" provision afforded to defendants.

In sum, we conclude that plaintiffs fail to plausibly allege that defendants breached the "Adjustments" provision of the Schedule of Terms.[5]

## II. Implied Covenant of Good Faith and Fair Dealing

The implied covenant of good faith and fair dealing is "a limited and extraordinary legal remedy" that "requires a party in a contractual relationship to refrain from arbitrary or unreasonable conduct which has the effect of preventing the other party to the contract from receiving the fruits of the bargain." *Nemec v. Shrader*, 991 A.2d 1120, 1128 (Del. 2010) (internal quotation marks and citation omitted). It is "not an equitable remedy for rebalancing economic interests that could have been anticipated." *Glaxo Grp. Ltd. v. DRIT LP*, 248 A.3d 911, 920 (Del. 2021) (internal quotation marks and citation omitted); *see also Gerber v. Enter. Prods. Holdings, LLC*, 67 A.3d 400, 419 (Del. 2013) ("[W]hat is 'arbitrary' or 'unreasonable' . . . depends on the parties' original contractual expectations, not a 'free-floating' duty applied at

---

[4] Carrier and Otis declined to make a similar post-merger adjustment.

[5] We determine, based on the same reasoning discussed above regarding the "Adjustments" provision, that plaintiffs fail to state a plausible claim that defendants breached Section 12(d) of the LTIP. Section 12(d) is limited by Section 10(b), which grants discretion to defendants. *See* Joint App'x 411 § 10(b) ("[T]he [Compensation] Committee . . . may . . . in its discretion make such substitutions or adjustments as it deems appropriate and equitable . . . .").

the time of the wrong." (citation omitted)), *overruled in part on other grounds by Winshall v. Viacom Int'l, Inc.*, 76 A.3d 808 (Del. 2013). Plaintiffs' claim that defendants breached the implied covenant is largely duplicative of their breach of contract allegations. Because we determine, as explained above, that plaintiffs do not plausibly allege that defendants abused their discretion under the relevant contracts, there is no arbitrary or unreasonable conduct that can form the proper basis for a claim of the implied covenant of good faith and fair dealing in the exercise of that discretion. Accordingly, the district court properly dismissed plaintiffs' implied covenant claim.[6]

\*        \*        \*

We have carefully considered plaintiffs' remaining arguments and find them to be without merit.[7] Accordingly, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

---

[6] Because plaintiffs failed to plausibly allege either a claim for breach of contract or the implied covenant of good faith and fair dealing, the district court also properly dismissed their claim for specific performance of the contract. *See Addy v. Piedmote*, No. 3571-VCP, 2009 WL 707641, at \*23 (Del. Ch. Mar. 18, 2009) (explaining that requests for equitable relief, such as specific performance, "are not claims in and of themselves, but types of remedies dependent on the viability and outcome of the underlying causes of action").

[7] Carrier and Otis raise several alternative grounds for dismissal. They argue that even if we were to conclude that a plausible claim for breach of contract exists as to Raytheon, plaintiffs do not state a claim against them for reasons stemming from the fact that they were not parties to the contracts that were allegedly breached. However, because we conclude that plaintiffs have failed to assert a plausible breach of contract claim, we need not address these alternative grounds for dismissal.